## Exhibit A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 15 |
| GROUPE DYNAMITE INC., *et al.*, | Case No. 20-12085 (CSS) |
| Debtors in a Foreign Proceeding,[1] | (Joint Administration Requested) |
|  | **Docket Ref. No. ___** |

## ORDER GRANTING PROVISIONAL RELIEF
## PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE

Upon the motion for certain provisional and injunctive relief (the "Motion") filed by the foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in connection with the Debtors' reorganization proceedings under Canadian law currently pending (the "Canadian Proceedings"); and upon this Court's review and consideration of the Motion, Verified Petition, Lutfy Declaration, and the Tardif Declaration;[2] this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); venue being proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3); appropriate, sufficient and timely notice of the filing of the Motion and the hearing thereon having been given pursuant to rules 1011(b) and 2002(q) of the Federal Rules of Bankruptcy Procedure

---

[1] The last four digits of the Debtors' tax identification number are as follows: (a) Groupe Dynamite Inc. (4210); (b) GRG USA Holdings Inc. (4293); and (c) GRG USA LLC (4008). Additional case information can be obtained on the website of the Debtors' claims and noticing agent at https://cases.omniagentsolutions.com/groupedynamite. The location of the Debtors' service address for purposes of these chapter 15 cases is 5592 Ferrier Street, Montreal, Quebec, Canada, H4P 1M2.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(the "Bankruptcy Rules"); and upon the record established at such hearing; it appearing that the relief requested in the Motion is necessary and beneficial to the Debtors; and no objections or other responses having been filed that have not been overruled, withdrawn or otherwise resolved; and after due deliberation and sufficient cause appearing therefor, IT IS HEREBY FOUND AND DETERMINED THAT:[3]

1.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      There is a substantial likelihood that the Foreign Representative will successfully demonstrate that the Canadian Proceedings constitute "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

3.      The commencement or continuation of any action or proceeding in the United States against the Debtors should be enjoined pursuant to sections 105(a) and 1519 of the Bankruptcy Code to permit the expeditious and economical administration of the Canadian Proceedings, and such relief will either (a) not cause an undue hardship to other parties in interest or (b) any hardship to parties is outweighed by the benefits of the relief requested.

4.      Consistent with findings by the Canadian Court and relief granted under the Initial Order and the Amended and Restated Initial Order, unless a preliminary injunction is issued with

---

[3]    The findings and conclusions set forth herein and in the record of the hearing on the Verified Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

respect to the Debtors, and to the same extent provided in the Initial Order, there is a material risk that the Debtors' creditors or other parties-in-interest in the United States could use the Canadian Proceedings and these chapter 15 cases as a pretext to exercise certain remedies under the Credit Agreement or to terminate executory contracts or unexpired leases with respect to the Debtors.

5.      Such acts could (a) interfere with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, (b) interfere with and cause harm to the Debtors' efforts to administer the Canadian Proceedings, (c) interfere with the Debtors' operations, and (d) undermine the Debtors' efforts to achieve an equitable result for the benefit of all of the Debtors' creditors.  Accordingly, there is a material risk that the Debtors may suffer immediate and irreparable injury, and it is therefore necessary that the Court enter this order (this "Order").

6.      The Foreign Representative has demonstrated that, in the interest of comity, the purpose of chapter 15 is carried out by granting recognition and giving effect to the Initial Order and, upon its entry by the Canadian Court, the Amended and Restated Initial Order.

7.      The interest of the public will be served by this Court's entry of this Order.

8.      The Foreign Representatives and the Debtors are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:**

9.      Beginning on the Petition Date and continuing until the date of the entry of an order of this Court recognizing the Canadian Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code and the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code (unless otherwise extended pursuant to section 1519(b) of the Bankruptcy Code), with respect to the Debtors:

a.  the Foreign Representative shall be the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States.

b.  section 361 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.

c.  section 362 of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.  For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

   i.  the commencement or continuation, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets, located in the United States except as authorized by the Debtors in writing;

   ii.  the creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative;

   iii.  any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases; and

   iv.  the setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases against any claim against of the Debtors.

d.  for counterparties to certain of the Debtors' executory contracts and unexpired leases section 365(e) of the Bankruptcy Code shall apply with respect to each of the Debtors and the property of each of the Debtors.

e.  the Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance

with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

f.     any and all landlords or other parties with a lease of premises to the Debtors located within the US are hereby prohibited from: taking any steps to cancel, terminate, or modify any lease for any reason, including non-payment of rent and/or due to any ipso facto clause described by section 365(e)(1) of the Bankruptcy Code; enforcing any "landlord lien", possessory lien or similar lien against any property of the Debtor; changing the locks or codes on any of the Debtor's premises; or commencing or continuing any eviction or similar proceedings; and

g.     notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

10.    The Foreign Representative, in connection with his appointment as the "foreign representative" in these cases, and the Debtors, are hereby granted the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

11.    The Initial Order (as entered by the Canadian Court), attached hereto as **Exhibit 1**, is hereby given full force and effect on a provisional basis, including, without limitation, the sections of the Initial Order (a) staying the commencement or continuation of any actions against the Debtors and their assets, (b) granting the Directors' Charge and Administration Charge, (c) declaring that Quebec is the "*center of main interest*" of the Debtors, in each case to the same extent provided in the Initial Order, and (d) disclaiming certain leases and other contractual agreements.

12.    Upon entry of the Amended and Restated Initial Order by the Canadian Court in the Canadian Proceedings superseding the Initial Order, such entered Amended and Restated Initial Order, substantially in the form attached hereto as **Exhibit 2** (and as may be amended,

modified, or supplemented prior to its approval by the Canadian Court in the Canadian Proceedings, which amended, modified, or supplemented version approved by the Canadian Court in the Canadian Proceedings shall be filed on the docket of these Chapter 15 Cases and served on the Core Notice Parties), shall be given full force and effect on a provisional basis, including, without limitation, the provisions (a) already included in the Initial Order, and (b) granting relief with respect to leases and rent obligations of the Debtors, to the extent authorized by the Canadian Court.

13.    Pursuant to Bankruptcy Rule 7065, the security provisions of rule 65(c) of the Federal Rules of Civil Procedure are waived.

14.    Service in accordance with this Order shall be deemed good and sufficient service and adequate notice for all purposes.  The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or Local Rules.

15.    The banks and financial institutions with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Debtors' bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtors, as the case may be.

16.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

17.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through these chapter 15 cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

## <u>EXHIBIT 1</u>

**Initial Order**

**SUPERIOR COURT**
**(COMMERCIAL DIVISION)**

Canada
Province of Québec
District of Montréal
No: 500-11-058763-208
Date: September 8, 2020

---

Presiding:     The Honourable Peter Kalichman, J.S.C.

---

In the matter of the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 of:

**Groupe Dynamite Inc.**
**GRG USA Holdings Inc.**
**GRG USA LLC**

  Debtors

and

**Deloitte Restructuring Inc.**

  Monitor

---

**INITIAL ORDER**

---

[1]   CONSIDERING the *Application for an Initial Order and an Amended and Restated Initial Order* dated September 8, 2020 (the "**Application**") of Groupe Dynamite Inc., GRG USA Holdings Inc. and GRG USA LLC (collectively, the "**Debtors**") pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 (the "**CCAA**"), the affidavit, and the exhibits, including the report of the proposed Monitor;

[2]   CONSIDERING the notification of the Application to the secured creditors who are likely affected by certain of the charges created herein;

[3]   CONSIDERING the representations of the lawyers present;

[4]   CONSIDERING the provisions of the CCAA;

**THE COURT:**

[5]   GRANTS the Application.

[6]   ISSUES an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

- Service
- Application of the CCAA
- Effective Time
- Plan of Arrangement
- Administrative Consolidation
- Stay of Proceedings against the Debtors and the Property

- Stay of Proceedings against the Directors and Officers
- Possession of Property and Operations
- No Exercise of Rights or Remedies
- No Interference with Rights
- Continuation of Services
- Interim Financing
- Non-Derogation of Rights
- Directors' and Officers' Indemnification and Charge
- Restructuring
- Powers of the Monitor
- Gift Cards and Loyalty Programs
- Priorities and General Provisions Relating to CCAA Charges
- Hearing scheduling and details
- Come-back hearing
- General

## Service

[7]    ORDERS that any prior delay for the presentation of the Application is hereby abridged and validated so that the Application is properly returnable today and hereby dispenses with further service thereof.

[8]    DECLARES that sufficient prior notice of the presentation of this Application has been given by the Debtors to interested parties, including the secured creditors which are likely to be affected by the charges created herein.

## Application of the CCAA

[9]    DECLARES that the Debtors are debtor companies to which the CCAA applies.

## Effective Time

[10]    DECLARES that this Order and all of its provisions are effective as of 12:01 a.m. Montréal time, province of Québec, on September 8, 2020 (the "**Effective Time**").

## Plan of Arrangement

[11]    DECLARES that the Debtors shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

## Administrative Consolidation

[12]    ORDERS the consolidation of the CCAA proceedings of the Debtors under one single Court file, in file number 500-11-058763-208.

[13]    ORDERS that all proceedings, filings, and other matters in the CCAA proceedings be filed jointly and together by the Debtors under file number 500-11-058763-208.

[14]    DECLARES that the consolidation of these CCAA proceedings in respect of the Debtors shall be for administrative purposes only and shall not effect a consolidation of the assets and property or of the debts and obligations of each of the Debtors including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

## Stay of Proceedings against the Debtors and the Property

[15]    ORDERS that, until and including September 18, 2020, or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), including but not limited to seizures, right to distrain, executions, writs of seizure or execution, any and all actions, applications, arbitration proceedings and other lawsuits existing at the time of this Order in which any of the Debtors is a defendant, party or respondent (either individually or with other Persons (as defined below)) shall be commenced or continued against or in respect of the Debtors, or affecting the Debtors' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph [23] herein except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to section 11.1 CCAA.

[16]    ORDERS that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of section 11.09 CCAA.

## Stay of Proceedings against Directors and Officers

[17]    ORDERS that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of any of the Debtors under subsection 11.03(3) of the CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

## Possession of Property and Operations

[18]    ORDERS that, subject to this Order, the Debtors shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and all bank accounts (collectively the "**Property**") notwithstanding any enforcement process, including but not limited to seizures, right to distrain, executions, writs of seizure or execution, the whole in accordance with the terms and conditions of this Order.

[19]    ORDERS that, subject to this Order, each of the Debtors are authorized to complete outstanding transactions and engage in new transactions with other Debtors, and to continue, on and after the date of this Order, to buy and sell goods and services, and allocate, collect and pay costs, expenses and other amounts from and to the other Debtors, or any of them (collectively, the "**Intercompany Transactions**") in the ordinary course of business. All ordinary course Intercompany Transactions among the Debtors shall continue on terms consistent with existing arrangements or past practice, subject to

such changes thereto, or to such governing principles, policies or procedures as the Monitor may require, or subject to this Order or further Order of this Court.

[20]   ORDERS that the Debtors shall be entitled to continue to utilize the central cash management system currently in place as described in the Application (the "**Cash Management System**").

[21]   ORDERS that the Debtors shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a)   all outstanding and future wages, salaries, bonuses, expenses, benefits and vacation pay payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)   the fees and disbursements of any agent, advisor or counsel retained or employed by the Debtors or by the Agent on behalf of the Secured Lenders in respect of these proceedings, at their standard rates and charges; and

(c)   with the consent of the Monitor, and only after the Interim Facility has been advanced to the Debtors for an amount of $10,000,000, amounts owing for goods or services actually supplied to the Debtors prior to the date of this Order by third party suppliers up to a maximum aggregate amount of $5,000,000, if, in the opinion of the Debtors, the supplier is critical to the business and ongoing operations of the Debtors.

[22]   ORDERS that the Debtors shall remit, in accordance with legal requirements, or pay:

(a)   any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Québec Pension Plan, and (iv) income taxes; and

(b)   all goods and services, harmonized sales or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Debtors and in connection with the sale of goods and services by the Debtors, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order.

**No Exercise of Rights or Remedies**

[23]   ORDERS that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies, including, but not limited to modifications of existing rights and events deemed to occur pursuant to any agreement to which any of the Debtors is a party as a result of the insolvency of the Debtors and/or these CCAA proceedings, any events of default or non-performance by the Debtors or any admissions or evidence in these CCAA proceedings, of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being

"**Persons**" and each being a "**Person**") against or in respect of the Debtors, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

[24] DECLARES that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Debtors or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Debtors, or any of them, become(s) bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of any of the Debtors, the period between the date of this Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

## No Interference with Rights

[25] ORDERS that during the Stay Period, no Person shall discontinue, fail to renew per the same terms and conditions, honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Debtors, as applicable, and the Monitor, or with leave of this Court.

## Continuation of Services

[26] ORDERS that during the Stay Period and subject to paragraph [28] hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Debtors, are hereby restrained until further order of this Court from discontinuing, failing to renew per the same terms and conditions, altering, interfering with, terminating the supply or, where the case may be, interrupting, delaying or stopping the transit of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Debtors, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Debtors, as applicable, with the consent of the Monitor, or as may be ordered by this Court.

[27] ORDERS that, subject to subsection 11.01 CCAA hereof, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to make further advance of money or otherwise extend any credit to the Debtors.

[28]    ORDERS that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by any Debtor with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by an Debtor and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into an Debtor's account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

[28A]   PRAYS ACTof the consent of each of the Secured Lenders to suspend, until the day of the Comeback hearing and without prejudice or waiver of such right, and subject to the Interim Facility being advanced to the Debtors for an amount of $10,000,000, its right to effect set-off between:

(a)    the amount of $13,205,000 cash in the Secured Lenders' bank accounts (the "**Cash in the Bank Accounts**"); and

(b)    the Secured Lenders' total advances to the Debtors.

[28B]   ORDERS that the Cash in the Bank Accounts shall be maintained and kept in a segregated account until the day of the Comeback hearing, unless otherwise agreed between the Agent and the Debtors.

[28C]   AUTHORIZES the Debtors to pay to each of the Secured Lenders, when due, all amounts owing (including principal, interest, fees and expenses), including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Secured Lenders on a full indemnity basis under the loan documents and to perform all of their other obligations to the Secured Lenders pursuant to the loan documents and this Order.

**Non-Derogation of Rights**

[29]    ORDERS that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of any of the Debtors shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of this Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Interim Financing**

[30]    ORDERS that the Debtors are authorized to borrow, repay and reborrow from 10644579 Canada Inc. (the "**Interim Lender**") such amounts from time to time as they may consider necessary or desirable, up to a maximum principal amount of $10,000,000 outstanding at any time, on the terms and conditions as set forth in the Amended Interim Financing Term Sheet, Exhibit P-10 (the "**Interim Financing Term Sheet**") and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of the Debtors and to pay such other amounts as are permitted by the terms of this Order and the Interim

Financing Documents (as defined hereinafter) (the "**Interim Facility**").

[31]    ORDERS that the Debtors are authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility and the Interim Financing Term Sheet, and the Debtors are authorized to perform all of its obligations under the Interim Financing Documents.

[32]    ORDERS that the Debtors shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender on a full indemnity basis (the "**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of its other obligations to the Interim Lender pursuant to the Interim Financing Term Sheet, the Interim Financing Documents and this Order.

[33]    DECLARES that all of the Property of the Debtors is subject to a charge, hypothec and security for an aggregate amount of $12,000,000 (the "**Interim Lender Charge**") in favour of the Interim Lender as security for all obligations of the Debtors to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Interim Financing Term Sheet and the Interim Financing Documents. The Interim Lender Charge shall have the priority established by paragraphs [53] and [54] of this Order..

[34]    ORDERS that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to the Plan or these proceedings and the Interim Lender, in that capacity, shall be treated as an unaffected creditor in these proceedings and in any Plan.

[35]    ORDERS that the Interim Lender may:

(a)    notwithstanding any other provision of this Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

(b)    notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Debtors if they fail to meet the provisions of the Interim Financing Term Sheet and the Interim Financing Documents.

[36]    ORDERS that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the Interim Lender Charge without providing at least 5 business days written notice (the "**Notice Period**") of a default thereunder to the Debtors, the Monitor, the Agent and to creditors whose rights are registered or published at the appropriate registers or requesting a copy of such notice. Upon expiry of such Notice Period, the Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the Interim Lender Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA and upon the Interim Lender taking such steps, the Agent and the Secured Lenders shall be entitled to take any and all steps under the loan documents and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA.

[37]   ORDERS that, subject to further order of this court, no order shall be made varying, rescinding, or otherwise affecting paragraphs [30] to [36] hereof unless either (a) notice of a motion for such order is served on the interim lender by the moving party within seven (7) days after that party was served with the order or (b) the Interim Lender applies for or consents to such order.

## Directors' and Officers' Indemnification and Charge

[38]   ORDERS that the Debtors shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors after the Effective Time, except where such obligations or liabilities were incurred as a result of such Director's gross negligence, willful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[39]   ORDERS that the Directors of the Debtors shall be entitled to the benefit of and are hereby granted a charge, security and hypothec in the Property to the extent of the aggregate amount of $6,950,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph [38] hereof as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time, having the priority established by paragraphs [53] and [54] of this Order.

[40]   ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [38] of this Order.

## Restructuring

[41]   DECLARES that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Debtors shall have the right, subject to approval of the Monitor or further order of the Court, to:

   (a)   permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

   (b)   terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as they deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Debtors, as applicable, and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Debtors may determine;

   (c)   disclaim or resiliate agreements, subject to the provisions of section 32 CCAA which are as follows:

32 (1) Subject to subsections (2) and (3), a debtor company may — on notice given in the prescribed form and manner to the other parties to the agreement and the monitor — disclaim or resiliate any agreement to which the company is a party on the day on which proceedings commence under this Act. The company may not give notice unless the monitor approves the proposed disclaimer or resiliation.

(2) Within 15 days after the day on which the company gives notice under subsection (1), a party to the agreement may, on notice to the other parties to the agreement and the monitor, apply to a court for an order that the agreement is not to be disclaimed or resiliated.

(3) If the monitor does not approve the proposed disclaimer or resiliation, the company may, on notice to the other parties to the agreement and the monitor, apply to a court for an order that the agreement be disclaimed or resiliated.

(4) In deciding whether to make the order, the court is to consider, among other things,

(a) whether the monitor approved the proposed disclaimer or resiliation;

(b) whether the disclaimer or resiliation would enhance the prospects of a viable compromise or arrangement being made in respect of the company; and

(c) whether the disclaimer or resiliation would likely cause significant financial hardship to a party to the agreement.

(5) An agreement is disclaimed or resiliated

(a) if no application is made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1);

(b) if the court dismisses the application made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1) or on any later day fixed by the court; or

(c) if the court orders that the agreement is disclaimed or resiliated under subsection (3), on the day that is 30 days after the day on which the company gives notice or on any later day fixed by the court.

(6) If the company has granted a right to use intellectual property to a party to an agreement, the disclaimer or resiliation does not affect the party's right to use the intellectual property — including the party's right to enforce an exclusive use — during the term of the agreement, including any period for which the party extends the agreement as of right, as long as the party continues to perform its obligations under the agreement in relation to the use of the intellectual property.

(7) If an agreement is disclaimed or resiliated, a party to the agreement who suffers a loss in relation to the disclaimer or resiliation is considered to have a provable claim.

(8) A company shall, on request by a party to the agreement, provide in writing the reasons for the proposed disclaimer or resiliation within five days after the day on which the party requests them.

(9) This section does not apply in respect of

(a) an eligible financial contract;

(b) a collective agreement;

(c) a financing agreement if the company is the borrower; or

(d) a lease of real property or of an immovable if the company is the lessor.

and

[42]    DECLARES that, if a notice of disclaimer or resiliation is given to a landlord of any of the Debtors pursuant to section 32 of the CCAA and subsection [41](c) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving such Debtor and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Debtors, provided nothing herein shall relieve such landlord of their obligation to mitigate any damages claimed in connection therewith.

[43]    DECLARES that, in order to facilitate the Restructuring, the Debtors may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

[44]    DECLARES that, pursuant to sub-paragraph 7(3)(c) of the Personal Information Protection and Electronic Documents Act, SC 2000, c 5, the Debtors are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Debtors binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Debtors or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Debtors.

**Powers of the Monitor**

[45]   ORDERS that Deloitte Restructuring Inc. is hereby appointed to monitor the business and financial affairs of the Debtors as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

   (a)   shall, as soon as practicable, (i) publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in La Presse+ and the Globe & Mail National Edition and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Debtors of more than $1,000, advising them that this Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

   (b)   shall monitor the Debtors' receipts and disbursements;

   (c)   shall assist the Debtors, to the extent required by the Debtors, in dealing with their creditors and other interested Persons during the Stay Period;

   (d)   shall assist the Debtors, to the extent required by the Debtors, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

   (e)   shall advise and assist the Debtors, to the extent required by the Debtors, to review the Debtors' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

   (f)   shall assist the Debtors, to the extent required by the Debtors, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

   (g)   shall report to the Court on the state of the business and financial affairs of the Debtors or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order and may file consolidated reports for the Debtors;

   (h)   shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

   (i)   may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of this Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)    may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under this Order or under the CCAA;

(k)    may act as a "foreign representative" of any of the Debtors or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada or the United States;

(l)    may hold and administer funds in connection with arrangements made among the Debtors, any counterparties and the Monitor, or by Order of this Court;  and

(m)    may perform such other duties as are required by this Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Debtors, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Debtors nor shall the Monitor be deemed to have done so.

[46]    ORDERS that the Debtors and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of this Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Debtors in connection with the Monitor's duties and responsibilities hereunder.

[47]    DECLARES that the Monitor may provide creditors and other relevant stakeholders of the Debtors with information in response to requests made by them in writing addressed to the Monitor and copied to the counsel for the Debtors. In the case of information that the Monitor has been advised by the Debtors is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Debtors unless otherwise directed by this Court.

[48]    DECLARES that if the Monitor, in its capacity as Monitor, carries on the business of the Debtors or continues the employment of the Debtors' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[49]    DECLARES that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with prior leave of this Court, on at least seven days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[50]    ORDERS that the Debtors shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the legal counsel for the Debtors and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after this Order, and shall be authorized to provide each with a

reasonable retainer in advance on account of such fees and disbursements, if so requested.

[51]    DECLARES that the Monitor as well as the Monitor's legal counsel (Norton Rose Fulbright Canada LLP) and the legal counsel for the Debtors (McCarthy Tétrault LLP), as security for the professional fees and disbursements incurred both before and after the making of this Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge, hypothec and security in the Property to the extent of the aggregate amount of $250,000 (the "**Administration Charge**"), having the priority established by paragraphs [53] and [54] of this Order.

## Gift Cards and Loyalty Programs

[52]    AUTHORIZES, notwithstanding anything to the contrary in this Order, the Debtors to continue to honour or comply with any customer deposits, pre-payments, gift cards, store credits, loyalty program and any similar programs offered by the Debtors.

## Priorities and General Provisions Relating to CCAA Charges

[53]    DECLARES that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property whether or not charged by such Encumbrances, except that the Interim Lender Charge shall rank after the Encumbrances securing any obligation, liability or indebtedness pursuant to the credit agreement dated February 28, 2020 entered into amongst GDI, as borrower, National Bank of Canada, as administrative agent (the "**Agent**"), and National Bank of Canada, Bank of Montreal, The Toronto-Dominion Bank and Fédération des Caisses Desjardins du Québec, as lenders (the "**Secured Lenders**"), as amended pursuant to a First Amending Agreement to the Credit Agreement dated as of April 30, 2020 and a Second Amending Agreement to the Credit Agreement dated as of July 3, 2020 (the "**Secured Lenders' Existing Security**").

[54]    DECLARES that the priorities of the Administration Charge and the Directors' Charge (collectively, the "**CCAA Charges**"), as well as the Secured Lenders' Existing Security, as between them with respect to any Property to which they apply, shall be as follows:

(a)    first, the Administration Charge; and

(b)    second, the Directors' Charge;

(c)    third, the Secured Lenders' Existing Security; and

(d)    fourth, the Interim Lender Charge.

[55]    ORDERS that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Debtors, as applicable, obtain the prior written consent of the Monitor and the Debtors, and the prior approval of the Court.

[56]    DECLARES that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[57]    DECLARES that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and not otherwise be limited or impaired in any way by: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtor; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Debtors (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

   (a)    the creation of any of the CCAA Charges shall not create nor be deemed to constitute a breach by the Debtors of any Third Party Agreement to which any of the Debtor is a party; and

   (b)    the beneficiaries of the CCAA Charges shall not have any liability to any Debtors whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[58]    DECLARES that notwithstanding: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtor; and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any of the Debtor pursuant to this Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[59]    DECLARES that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Debtors.

**Hearing scheduling and details**

[60]    ORDERS that, subject to further Order of this Court, all applications in these CCAA proceedings are to be brought on not less than five (5) days' notice to all Persons on the service list. Each application shall specify a date (the "**Initial Hearing Date**") and time (the "**Initial Hearing Time**") for the hearing.

[61]    ORDERS that any Person wishing to object to the relief sought on an application in these CCAA proceedings, provided such Person has received two (2) business days' prior notice of such application being presented, must serve a detailed written contestation stating the objection to the application and the grounds for such objection (a "**Contestation**") in writing to the moving party, the Debtors and the Monitor, with a copy

to all Persons on the service list, no later than 5 p.m. Montréal Time on the date that is three (3) days prior to the Initial Hearing Date (the "**Objection Deadline**").

[62]     ORDERS that, if no Contestation is served by the Objection Deadline, the Judge having carriage of the application (the "**Presiding Judge**") may determine: (a) whether a hearing is necessary; (b) whether such hearing will be in person, by telephone or by written submissions only; and (c) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course.

[63]     ORDERS that, if no Contestation is served by the Objection Deadline, the Debtors shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Debtors shall thereafter advise the service list of the Hearing Details and the Debtors shall report upon its dissemination of the Hearing Details to the Court in a timely manner.

[64]     ORDERS that, if a Contestation is served by the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Hearing Date at the Initial Hearing Time, or such earlier or later time as may be directed by the Court, to, as the Court may direct: (a) proceed with the hearing on the Initial Hearing Date and at the Initial Hearing Time; or (b) establish a schedule for the delivery of materials and the hearing of the contested application and such other matters, including interim relief, as the Court may direct.

## Come-back hearing

[65]     ORDERS that, notwithstanding paragraph [62], a full hearing on the orders sought in the Application shall take place on September 17, 2020 at 9:15 am by means to be determined by the Court and to be communicated to the service list.

## General

[66]     ORDERS that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisors of the Debtors or of the Monitor in relation to the Business or Property of the Debtors, without first obtaining leave of this Court, upon ten (10) days' written notice to the Debtors counsel, the Monitor's counsel, and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[67]     DECLARES that this Order and any proceeding or affidavit leading to this Order, shall not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[68]     DECLARES that, except as otherwise specified herein, the Debtors and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors and that any such service shall be deemed to be received on the date of delivery if by

personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[69]   DECLARES that the Debtors and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing an electronic copy of such materials to counsels' email addresses.

[70]   DECLARES that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on counsel for the Debtors and counsel for the Monitor and has filed such notice with this Court, or appears on the service list prepared by counsel for the Monitor, save and except when an order is sought against a Person not previously involved in these proceedings.

[71]   DECLARES that the Debtors or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of this Order on notice only to each other.

[72]   DECLARES that this Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[73]   AUTHORIZES Groupe Dynamite Inc. to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court and, without limitation to the foregoing, any orders under Chapter 15 of the U.S. Bankruptcy Code, including an order for recognition of these CCAA proceedings as "Foreign Main Proceedings" in the United States of America pursuant to Chapter 15 of the U.S. Bankruptcy Code, and for which Groupe Dynamite Inc. shall be the foreign representative of the Debtors (the "**Foreign Representative**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Debtors and the Foreign Representative as may be deemed necessary or appropriate for that purpose.

[74]   REQUESTS the aid and recognition of any Court, tribunal, regulatory or administrative body in Canada, the United States of America or elsewhere, to give effect to this Order and to assist the Debtors, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Debtors, and the Monitor as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Debtors in any foreign proceeding, to assist the Debtors, and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

[75]   DECLARES that, for the purposes of any applications authorized by paragraphs [73] and [74], Debtors' centre of main interest is located in the province of Québec, Canada.

[76]   ORDERS that Exhibit P-2 and Appendices B, C and D to Exhibit P-6 in support of the Application are confidential and are filed under seal, and PRAYS ACT of the Debtors'

undertaking to communicate any of those exhibits to certain creditors following an undertaking of confidentiality.

[77]     ORDERS the provisional execution of this Order notwithstanding any appeal.

The Honourable Peter Kalichman, J.S.C.

**<u>EXHIBIT 2</u>**

**Amended and Restated Initial Order**

**SUPERIOR COURT
(COMMERCIAL DIVISION)**

Canada
Province of Québec
District of Montréal
No: 500-11-
Date: September 18, 2020

Presiding:      The Honourable Peter Kalichman, J.S.C.

In the matter of the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 of:

**Groupe Dynamite Inc.**
**GRG USA Holdings Inc.**
**GRG USA LLC**

     Debtors

and

**Deloitte Restructuring Inc.**

     Monitor

**AMENDED AND RESTATED INITIAL ORDER**

[1]      CONSIDERING the *Application for an Initial Order and an Amended and Restated Initial Order* dated September 8, 2020 (the "**Application**") of Groupe Dynamite Inc., GRG USA Holdings Inc. and GRG USA LLC (collectively, the "**Debtors**") pursuant to the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 (the "**CCAA**"), the affidavit, and the exhibits, including the report of the proposed Monitor;

[2]      CONSIDERING the notification of the Application;

[3]      CONSIDERING the representations of the lawyers present;

[4]      CONSIDERING the provisions of the CCAA;

**THE COURT:**

[5]      GRANTS the Application.

[6]      ISSUES an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

- Service
- Application of the CCAA
- Effective Time
- Plan of Arrangement
- Administrative Consolidation

KE :.

- Stay of Proceedings against the Debtors and the Property
- Stay of Proceedings against the Directors and Officers
- Possession of Property and Operations
- No Exercise of Rights or Remedies
- No Interference with Rights
- Continuation of Services
- Interim Financing
- Non-Derogation of Rights
- Directors' and Officers' Indemnification and Charge
- Restructuring
- Powers of the Monitor
- Specific Measures with Respect to the Leases
- Gift Cards and Loyalty Programs
- Priorities and General Provisions Relating to CCAA Charges
- Hearing scheduling and details
- Come-back hearing
- General

**Service**

[7]     ORDERS that any prior delay for the presentation of the Application is hereby abridged and validated so that the Application is properly returnable today and hereby dispenses with further service thereof.

[8]     DECLARES that sufficient prior notice of the presentation of this Application has been given by the Debtors to interested parties, including the secured creditors which are likely to be affected by the charges created herein.

**Application of the CCAA**

[9]     DECLARES that the Debtors are debtor companies to which the CCAA applies.

**Effective Time**

[10]    DECLARES that this Order and all of its provisions are effective as of 12:01 a.m. Montréal time, province of Québec, on September 8, 2020 (the "**Effective Time**").

**Plan of Arrangement**

[11]    DECLARES that the Debtors shall have the authority to file with this Court and to submit to their creditors one or more plans of compromise or arrangement (collectively, the "**Plan**") in accordance with the CCAA.

**Administrative Consolidation**

[12]    ORDERS the consolidation of the CCAA proceedings of the Debtors under one single Court file, in file number ●.

[13]    ORDERS that all proceedings, filings, and other matters in the CCAA proceedings be filed jointly and together by the Debtors under file number ●.

[14]    DECLARES that the consolidation of these CCAA proceedings in respect of the Debtors shall be for administrative purposes only and shall not effect a consolidation of the assets and property or of the debts and obligations of each of the Debtors including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

**Stay of Proceedings against the Debtors and the Property**

[15]    ORDERS that, until and including September 18, 2020, or such later date as the Court may order (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), including but not limited to seizures, right to distrain, executions, writs of seizure or execution, any and all actions, applications, arbitration proceedings and other lawsuits existing at the time of this Order in which any of the Debtors is a defendant, party or respondent (either individually or with other Persons (as defined below)) shall be commenced or continued against or in respect of the Debtors, or affecting the Debtors' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph [23] herein except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Debtors or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to section 11.1 CCAA.

[16]    ORDERS that the rights of Her Majesty in right of Canada and Her Majesty in right of a Province are suspended in accordance with the terms and conditions of section 11.09 CCAA.

**Stay of Proceedings against Directors and Officers**

[17]    ORDERS that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of any of the Debtors under subsection 11.03(3) of the CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**Possession of Property and Operations**

[18]    ORDERS that, subject to this Order, the Debtors shall remain in possession and control of their present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof and all bank accounts (collectively the "**Property**") notwithstanding any enforcement process, including but not limited to seizures, right to distrain, executions, writs of seizure or execution, the whole in accordance with the terms and conditions of this Order.

[19]     ORDERS that, subject to this Order, each of the Debtors are authorized to complete outstanding transactions and engage in new transactions with other Debtors, and to continue, on and after the date of this Order, to buy and sell goods and services, and allocate, collect and pay costs, expenses and other amounts from and to the other Debtors, or any of them (collectively, the "**Intercompany Transactions**") in the ordinary course of business. All ordinary course Intercompany Transactions among the Debtors shall continue on terms consistent with existing arrangements or past practice, subject to such changes thereto, or to such governing principles, policies or procedures as the Monitor may require, or subject to this Order or further Order of this Court.

[20]     ORDERS that the Debtors shall be entitled to continue to utilize the central cash management system currently in place as described in the Application (the "**Cash Management System**").

[21]     ORDERS that the Debtors shall be entitled but not required to pay the following expenses whether incurred prior to or after this Order:

(a)     all outstanding and future wages, salaries, bonuses, expenses, benefits and vacation pay payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)     the fees and disbursements of any agent, advisor or counsel retained or employed by the Debtors or by the Agent on behalf of the Secured Lenders in respect of these proceedings, at their standard rates and charges; and

(c)     with the consent of the Monitor, and only after the Interim Facility has been advanced to the Debtors for an amount of $10,000,000, amounts owing for goods or services actually supplied to the Debtors prior to the date of this Order by third party suppliers up to a maximum aggregate amount of $5,000,000, if, in the opinion of the Debtors, the supplier is critical to the business and ongoing operations of the Debtors.

[22]     ORDERS that the Debtors shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Québec Pension Plan, and (iv) income taxes; and

(b)     all goods and services, harmonized sales or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Debtors and in connection with the sale of goods and services by the Debtors, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order.

**No Exercise of Rights or Remedies**

[23]    ORDERS that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies, including, but not limited to modifications of existing rights and events deemed to occur pursuant to any agreement to which any of the Debtors is a party as a result of the insolvency of the Debtors and/or these CCAA proceedings, any events of default or non-performance by the Debtors or any admissions or evidence in these CCAA proceedings, of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Debtors, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

[24]    DECLARES that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Debtors or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Debtors, or any of them, become(s) bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of any of the Debtors, the period between the date of this Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the 30 day periods referred to in Sections 81.1 and 81.2 of the BIA.

**No Interference with Rights**

[25]    ORDERS that during the Stay Period, no Person shall discontinue, fail to renew per the same terms and conditions, honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Debtors, as applicable, and the Monitor, or with leave of this Court.

**Continuation of Services**

[26]    ORDERS that during the Stay Period and subject to paragraph [28] hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Debtors, are hereby restrained until further order of this Court from discontinuing, failing to renew per the same terms and conditions, altering, interfering with, terminating the supply or, where the case may be, interrupting, delaying or stopping the transit of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or

charges for all such goods or services received after the date of this Order are paid by the Debtors, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Debtors, as applicable, with the consent of the Monitor, or as may be ordered by this Court.

[27]     ORDERS that, subject to subsection 11.01 CCAA and paragraphs [55] and [56] hereof, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to make further advance of money or otherwise extend any credit to the Debtors.

[28]     ORDERS that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, and the following paragraphs, cash or cash equivalents placed on deposit by any Debtor with any Person during the Stay Period, whether in an operating account or otherwise for itself or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing itself for the amount of any cheques drawn by an Debtor and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into an Debtor's account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

[28A]   PRAYS ACTof the consent of each of the Secured Lenders to suspend, until the day of the Comeback hearing and without prejudice or waiver of such right, and subject to the Interim Facility being advanced to the Debtors for an amount of $10,000,000, its right to effect set-off between:

(a)    the amount of $13,205,000 cash in the Secured Lenders' bank accounts (the "**Cash in the Bank Accounts**"); and

(b)    the Secured Lenders' total advances to the Debtors.

[28B]   ORDERS that the Cash in the Bank Accounts shall be maintained and kept in a segregated account until the day of the Comeback hearing, unless otherwise agreed between the Agent and the Debtors.

[28C]   AUTHORIZES the Debtors to pay to each of the Secured Lenders, when due, all amounts owing (including principal, interest, fees and expenses), including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Secured Lenders on a full indemnity basis under the loan documents and to perform all of their other obligations to the Secured Lenders pursuant to the loan documents and this Order.

**Non-Derogation of Rights**

[29]    ORDERS that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of any of the Debtors shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of this Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Interim Financing**

[30]    ORDERS that the Debtors are authorized to borrow, repay and reborrow from 10644579 Canada Inc. (the "**Interim Lender**") such amounts from time to time as they may consider necessary or desirable, up to a maximum principal amount of $20,000,000 outstanding at any time, on the terms and conditions as set forth in the Amended Interim Financing Term Sheet, Exhibit P-10 (the "**Interim Financing Term Sheet**") and in the Interim Financing Documents (as defined hereinafter), to fund the ongoing expenditures of the Debtors and to pay such other amounts as are permitted by the terms of this Order and the Interim Financing Documents (as defined hereinafter) (the "**Interim Facility**").

[31]    ORDERS that the Debtors are authorized to execute and deliver such credit agreements, security documents and other definitive documents (collectively the "**Interim Financing Documents**") as may be required by the Interim Lender in connection with the Interim Facility and the Interim Financing Term Sheet, and the Debtors are authorized to perform all of its obligations under the Interim Financing Documents.

[32]    ORDERS that the Debtors shall pay to the Interim Lender, when due, all amounts owing (including principal, interest, fees and expenses, including without limitation, all reasonable fees and disbursements of counsel and all other reasonably required advisers to or agents of the Interim Lender on a full indemnity basis (the "**Interim Lender Expenses**")) under the Interim Financing Documents and shall perform all of its other obligations to the Interim Lender pursuant to the Interim Financing Term Sheet, the Interim Financing Documents and this Order.

[33]    DECLARES that all of the Property of the Debtors is subject to a charge, hypothec and security for an aggregate amount of $24,000,000 (the "**Interim Lender Charge**") in favour of the Interim Lender as security for all obligations of the Debtors to the Interim Lender with respect to all amounts owing (including principal, interest and the Interim Lender Expenses) under or in connection with the Interim Financing Term Sheet and the Interim Financing Documents. The Interim Lender Charge shall have the priority established by paragraphs [63] to [64] of this Order.

[34]    ORDERS that the claims of the Interim Lender pursuant to the Interim Financing Documents shall not be compromised or arranged pursuant to the Plan or these proceedings and the Interim Lender, in that capacity, shall be treated as an unaffected

creditor in these proceedings and in any Plan.

[35]   ORDERS that the Interim Lender may:

    (a)   notwithstanding any other provision of this Order, take such steps from time to time as it may deem necessary or appropriate to register, record or perfect the Interim Lender Charge and the Interim Financing Documents in all jurisdictions where it deems it is appropriate; and

    (b)   notwithstanding the terms of the paragraph to follow, refuse to make any advance to the Debtors if they fail to meet the provisions of the Interim Financing Term Sheet and the Interim Financing Documents.

[36]   ORDERS that the Interim Lender shall not take any enforcement steps under the Interim Financing Documents or the Interim Lender Charge without providing at least 5 business days written notice (the "**Notice Period**") of a default thereunder to the Debtors, the Monitor, the Agent and to creditors whose rights are registered or published at the appropriate registers or requesting a copy of such notice. Upon expiry of such Notice Period, the Interim Lender shall be entitled to take any and all steps under the Interim Financing Documents and the Interim Lender Charge and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA and upon the Interim Lender taking such steps, the Agent and the Secured Lenders shall be entitled to take any and all steps under the loan documents and otherwise permitted at law, but without having to send any demands under Section 244 of the BIA.

[37]   ORDERS that, subject to further order of this court, no order shall be made varying, rescinding, or otherwise affecting paragraphs [30] to [36] hereof unless either (a) notice of a motion for such order is served on the interim lender by the moving party within seven (7) days after that party was served with the order or (b) the Interim Lender applies for or consents to such order.

**Directors' and Officers' Indemnification and Charge**

[38]   ORDERS that the Debtors shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Debtors after the Effective Time, except where such obligations or liabilities were incurred as a result of such Director's gross negligence, willful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[39]   ORDERS that the Directors of the Debtors shall be entitled to the benefit of and are hereby granted a charge, security and hypothec in the Property to the extent of the aggregate amount of $6,950,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph [38] hereof as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time, having the priority established by paragraphs [63] and [64] of this Order.

[40]   ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the

Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [38] of this Order.

## Restructuring

[41]    DECLARES that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Debtors shall have the right, subject to approval of the Monitor or further order of the Court, to:

    (a)    permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

    (b)    pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other manner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

    (c)    convey, transfer assign, lease, or in any other manner dispose of the Property, outside the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $250,000 or $1,000,000 in the aggregate;

    (d)    terminate the employment of such of their employees or temporarily or permanently lay off such of their employees as they deem appropriate and, to the extent any amounts in lieu of notice, termination or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Debtors, as applicable, and such employee, or failing such agreement, make provision to deal with, any consequences thereof in the Plan, as the Debtors may determine;

    (e)    disclaim or resiliate agreements, subject to the provisions of section 32 CCAA which are as follows:

    32 (1) Subject to subsections (2) and (3), a debtor company may — on notice given in the prescribed form and manner to the other parties to the agreement and the monitor — disclaim or resiliate any agreement to which the company is a party on the day on which proceedings commence under this Act. The company may not give notice unless the monitor approves the proposed disclaimer or resiliation.

    (2) Within 15 days after the day on which the company gives notice under subsection (1), a party to the agreement may, on notice to the other parties to the agreement and the monitor, apply to a court for an order that the agreement is not to be disclaimed or resiliated.

(3) If the monitor does not approve the proposed disclaimer or resiliation, the company may, on notice to the other parties to the agreement and the monitor, apply to a court for an order that the agreement be disclaimed or resiliated.

(4) In deciding whether to make the order, the court is to consider, among other things,

(a) whether the monitor approved the proposed disclaimer or resiliation;

(b) whether the disclaimer or resiliation would enhance the prospects of a viable compromise or arrangement being made in respect of the company; and

(c) whether the disclaimer or resiliation would likely cause significant financial hardship to a party to the agreement.

(5) An agreement is disclaimed or resiliated

(a) if no application is made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1);

(b) if the court dismisses the application made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1) or on any later day fixed by the court; or

(c) if the court orders that the agreement is disclaimed or resiliated under subsection (3), on the day that is 30 days after the day on which the company gives notice or on any later day fixed by the court.

(6) If the company has granted a right to use intellectual property to a party to an agreement, the disclaimer or resiliation does not affect the party's right to use the intellectual property — including the party's right to enforce an exclusive use — during the term of the agreement, including any period for which the party extends the agreement as of right, as long as the party continues to perform its obligations under the agreement in relation to the use of the intellectual property.

(7) If an agreement is disclaimed or resiliated, a party to the agreement who suffers a loss in relation to the disclaimer or resiliation is considered to have a provable claim.

(8) A company shall, on request by a party to the agreement, provide in writing the reasons for the proposed disclaimer or resiliation within five days after the day on which the party requests them.

(9) This section does not apply in respect of

(a) an eligible financial contract;

(b) a collective agreement;

(c) a financing agreement if the company is the borrower; or

(d) a lease of real property or of an immovable if the company is the lessor.

and

(f)     subject to section 11.3 CCAA, assign any rights and obligations of Debtors.

[42]    DECLARES that, if a notice of disclaimer or resiliation is given to a landlord of any of the Debtors pursuant to section 32 of the CCAA and subsection [41](e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving such Debtor and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as any such landlord may determine without waiver of, or prejudice to, any claims or rights of the landlord against the Debtors, provided nothing herein shall relieve such landlord of their obligation to mitigate any damages claimed in connection therewith.

[43]    DECLARES that, in order to facilitate the Restructuring, the Debtors may, subject to the approval of the Monitor, or further order of the Court, settle claims of customers and suppliers that are in dispute.

[44]    DECLARES that, pursuant to sub-paragraph 7(3)(c) of the Personal Information Protection and Electronic Documents Act, SC 2000, c 5, the Debtors are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Debtors binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Debtors or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Debtors.

**Powers of the Monitor**

[45]    ORDERS that Deloitte Restructuring Inc. is hereby appointed to monitor the business and financial affairs of the Debtors as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA:

(a) shall, as soon as practicable, (i) publish once a week for two (2) consecutive weeks or as otherwise directed by the Court, in La Presse+ and the Globe & Mail National Edition and (ii) within five (5) business days after the date of this Order (A) post on the Monitor's website (the "**Website**") a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Debtors of more than $1,000, advising them that this Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b) shall monitor the Debtors' receipts and disbursements;

(c) shall assist the Debtors, to the extent required by the Debtors, in dealing with their creditors and other interested Persons during the Stay Period;

(d) shall assist the Debtors, to the extent required by the Debtors, with the preparation of their cash flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e) shall advise and assist the Debtors, to the extent required by the Debtors, to review the Debtors' business and assess opportunities for cost reduction, revenue enhancement and operating efficiencies;

(f) shall assist the Debtors, to the extent required by the Debtors, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g) shall report to the Court on the state of the business and financial affairs of the Debtors or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order and may file consolidated reports for the Debtors;

(h) shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(i) may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of this Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(j) may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in

these proceedings and any related proceeding, under this Order or under the CCAA;

(k)    may act as a "foreign representative" of any of the Debtors or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada or the United States;

(l)    may hold and administer funds in connection with arrangements made among the Debtors, any counterparties and the Monitor, or by Order of this Court;  and

(m)    may perform such other duties as are required by this Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Debtors, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Debtors nor shall the Monitor be deemed to have done so.

[46]    ORDERS that the Debtors and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of this Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Debtors in connection with the Monitor's duties and responsibilities hereunder.

[47]    DECLARES that the Monitor may provide creditors and other relevant stakeholders of the Debtors with information in response to requests made by them in writing addressed to the Monitor and copied to the counsel for the Debtors. In the case of information that the Monitor has been advised by the Debtors is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Debtors unless otherwise directed by this Court.

[48]    DECLARES that if the Monitor, in its capacity as Monitor, carries on the business of the Debtors or continues the employment of the Debtors' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[49]    DECLARES that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with prior leave of this Court, on at least seven days' notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[50]    ORDERS that the Debtors shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the legal counsel for the Debtors and other advisers, directly related to these proceedings, the Plan and the Restructuring, whether incurred before or after this Order, and shall be authorized to provide each

with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[51]    DECLARES that the Monitor as well as the Monitor's legal counsel (Norton Rose Fulbright Canada LLP) and the legal counsel for the Debtors (McCarthy Tétrault LLP), as security for the professional fees and disbursements incurred both before and after the making of this Order and directly related to these proceedings, the Plan and the Restructuring, be entitled to the benefit of and are hereby granted a charge, hypothec and security in the Property to the extent of the aggregate amount of $750,000 (the "**Administration Charge**"), having the priority established by paragraphs [63] and [64] of this Order.

**Specific Measures with Respect to the Leases**

[52]    ORDERS that, for the use of each leased premises, the Debtors shall pay all amounts constituting rent or payable as rent under real property or immovable leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under its lease, but for greater certainty, excluding accelerated rent or penalties, fees, interests or other charges arising as a result of the insolvency of the Debtors or the making of this Order) or as otherwise may be negotiated between such Debtors and the landlord from time to time ("**Post-Filing Rent**"), for the period commencing on the Effective Time, twice-monthly in equal payments on the first and fifteenth day of each month, or the immediately following business day if that day is not a business day, in advance (but not in arrears). On the date of the first of such payments, any Post-Filing Rent relating to the period from the Effective Time to such date shall also be paid.

[53]    DECLARES that in the event the Debtors disclaim or resiliate an immovable or real estate lease in respect of any leased premises in accordance with the CCAA or this Order, the cost of restoring the leased premises shall not constitute a claim for the use of leased property during the Stay Period.

[54]    ORDERS that in the event the Debtors disclaim or resiliate the lease in respect of any leased premises in accordance with the CCAA, the Debtors shall not be required to pay Post-Filing Rent under such lease pending resolution of any dispute concerning furnishings, fixtures, equipment or a combination thereof located in the premises under lease, and the disclaimer of the lease shall be without prejudice to the Debtors' claim to the fixtures in dispute.

[55]    DECLARES that any Debtor which vacates, abandons or quits leased premises does not use such leased premises from the time of such vacation, abandonment or quitting, such that no Post-Filing Rent shall be due or payable by the Debtor with respect to those leased premises for the period posterior to such vacation, abandonment or quitting.

[56]    DECLARES that any Debtor which, as a result of a federal, provincial or state decree or order (a "**Lockdown Order**"), cannot operate a store in leased premises does not use such leased premises from the time such Lockdown Order enters into force until the time such Lockdown Order is no longer in force (the "**Lockdown Period**") such

that no Post-Filing Rent shall be due or payable by the Debtor with respect to those leased premises for the Lockdown Period.

[57] APPROVES the Sale Guidelines attached hereto as Schedule A (the "**Sale Guidelines**"), and DECLARES that there is a conflict between this Order and the Sale Guidelines, the former shall govern.

[58] ORDERS that each of the Debtors is authorized to conduct, market and sell (the "**Sale**") the retail inventory located in certain stores (the "**Merchandise**") and of all of the furnishings, fixtures and equipment located therein (the "**FF&E**") in accordance with this Order and the Sale Guidelines and to advertise and promote the Sale within the stores in accordance with the Sale Guidelines.

[59] ORDERS that each of the Debtors is authorized to conduct the Sale of the Merchandise and of the FF&E in accordance with the Sale Guidelines, and all rights, title and interest in and to the Merchandise and FF&E shall vest absolutely and exclusively in and with their respective purchaser(s), free and clear of and from any and all claims, liabilities (direct, indirect, absolute or contingent), obligations, interests, prior claims, taxes, security interests (whether contractual, statutory or otherwise), liens, charges (including any charges hereafter granted by this Court in these proceedings), hypothecs, mortgages, pledges, deemed trusts, assignments, judgments, executions, writs of seizure or execution, notices of sale, options, adverse claims, levies, rights of first refusal or other pre-emptive rights in favor of third parties, restrictions on transfer of title, or other claims or encumbrances, whether or not they have attached or been perfected, registered, published or filed and whether secured, unsecured or otherwise, whenever and howsoever arising, and whether such claims arose or came into existence prior to or following the date of this Order (collectively, the "**Encumbrances**"), including, without limiting the generality of the foregoing, all charges, security interests or hypothecs evidenced by registration, publication or filing pursuant to the *Civil Code of Québec*, or any other applicable legislation providing for a security interest in personal or movable property, and, for greater certainty, ORDERS that all of the Encumbrances affecting or relating to the Merchandise and FF&E, be expunged and discharged as against the Merchandise and FF&E, in each case effective as of the sale of the Merchandise and FF&E.

[60] DECLARES that, to the extent that the terms of the applicable leases are in conflict with any term of this Order or the Sale Guidelines, the terms of this Order and the Sale Guidelines shall govern.

[61] DECLARES that nothing contained in this Order or the Sale Guidelines shall be construed to create or impose upon the Debtors any additional restrictions not contained in the Leases.

**Gift Cards and Loyalty Programs**

[62] AUTHORIZES, notwithstanding anything to the contrary in this Order, the Debtors to continue to honour or comply with any customer deposits, pre-payments, gift cards, store credits, loyalty program and any similar programs offered by the Debtors.

**Priorities and General Provisions Relating to CCAA Charges**

[63]     DECLARES that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property whether or not charged by such Encumbrances, except that the Interim Lender Charge shall rank after the Encumbrances securing any obligation, liability or indebtedness pursuant to the credit agreement dated February 28, 2020 entered into amongst GDI, as borrower, National Bank of Canada, as administrative agent (the "**Agent**"), and National Bank of Canada, Bank of Montreal, The Toronto-Dominion Bank and Fédération des Caisses Desjardins du Québec, as lenders (the "**Secured Lenders**"), as amended pursuant to a First Amending Agreement to the Credit Agreement dated as of April 30, 2020 and a Second Amending Agreement to the Credit Agreement dated as of July 3, 2020 (the "**Secured Lenders' Existing Security**").

[64]     DECLARES that the priorities of the Administration Charge and the Directors' Charge (collectively, the "**CCAA Charges**"), as well as the Secured Lenders' Existing Security, as between them with respect to any Property to which they apply, shall be as follows:

(a)     first, the Administration Charge; and

(b)     second, the Directors' Charge;

(c)     third, the Secured Lenders' Existing Security; and

(d)     fourth, the Interim Lender Charge.

[65]     ORDERS that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges unless the Debtors, as applicable, obtain the prior written consent of the Monitor and the Debtors, and the prior approval of the Court.

[66]     DECLARES that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[67]     DECLARES that the CCAA Charges and the rights and remedies of the beneficiaries of the CCAA Charges, as applicable, shall be valid and enforceable and not otherwise be limited or impaired in any way by: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtor; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Debtors (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a) the creation of any of the CCAA Charges shall not create nor be deemed to constitute a breach by the Debtors of any Third Party Agreement to which any of the Debtor is a party; and

(b) the beneficiaries of the CCAA Charges shall not have any liability to any Debtors whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[68] DECLARES that notwithstanding: (i) these proceedings and the declarations of insolvency made herein; (ii) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such application(s) or any assignment(s) in bankruptcy made or deemed to be made in respect of any of the Debtor; and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by any of the Debtor pursuant to this Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[69] DECLARES that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Debtors.

**Hearing scheduling and details**

[70] ORDERS that, subject to further Order of this Court, all applications in these CCAA proceedings are to be brought on not less than five (5) days' notice to all Persons on the service list. Each application shall specify a date (the "**Initial Hearing Date**") and time (the "**Initial Hearing Time**") for the hearing.

[71] ORDERS that any Person wishing to object to the relief sought on an application in these CCAA proceedings, provided such Person has received two (2) business days' prior notice of such application being presented, must serve a detailed written contestation stating the objection to the application and the grounds for such objection (a "**Contestation**") in writing to the moving party, the Debtors and the Monitor, with a copy to all Persons on the service list, no later than 5 p.m. Montréal Time on the date that is three (3) days prior to the Initial Hearing Date (the "**Objection Deadline**").

[72] ORDERS that, if no Contestation is served by the Objection Deadline, the Judge having carriage of the application (the "**Presiding Judge**") may determine: (a) whether a hearing is necessary; (b) whether such hearing will be in person, by telephone or by written submissions only; and (c) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course.

[73] ORDERS that, if no Contestation is served by the Objection Deadline, the Debtors shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Debtors shall

thereafter advise the service list of the Hearing Details and the Debtors shall report upon its dissemination of the Hearing Details to the Court in a timely manner.

[74]  ORDERS that, if a Contestation is served by the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Hearing Date at the Initial Hearing Time, or such earlier or later time as may be directed by the Court, to, as the Court may direct: (a) proceed with the hearing on the Initial Hearing Date and at the Initial Hearing Time; or (b) establish a schedule for the delivery of materials and the hearing of the contested application and such other matters, including interim relief, as the Court may direct.

**Come-back hearing**

[75]  ORDERS that, notwithstanding paragraph [72], a full hearing on the orders sought in the Application shall take place on September 18, 2020, at ● in room ● of the Montréal Courthouse or at any other date determined by the Court and to be communicated to the service list.

**General**

[76]  ORDERS that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel or financial advisors of the Debtors or of the Monitor in relation to the Business or Property of the Debtors, without first obtaining leave of this Court, upon ten (10) days' written notice to the Debtors counsel, the Monitor's counsel, and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[77]  DECLARES that this Order and any proceeding or affidavit leading to this Order, shall not, in and of themselves, constitute a default or failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[78]  DECLARES that, except as otherwise specified herein, the Debtors and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[79]  DECLARES that the Debtors and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing an electronic copy of such materials to counsels' email addresses.

[80]  DECLARES that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on counsel for the Debtors and counsel for the Monitor and has filed such notice with

this Court, or appears on the service list prepared by counsel for the Monitor, save and except when an order is sought against a Person not previously involved in these proceedings.

[81]    DECLARES that the Debtors or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of this Order on notice only to each other.

[82]    DECLARES that this Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

[83]    AUTHORIZES Groupe Dynamite Inc. to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court and, without limitation to the foregoing, any orders under Chapter 15 of the U.S. Bankruptcy Code, including an order for recognition of these CCAA proceedings as "Foreign Main Proceedings" in the United States of America pursuant to Chapter 15 of the U.S. Bankruptcy Code, and for which Groupe Dynamite Inc. shall be the foreign representative of the Debtors (the "**Foreign Representative**"). All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Debtors and the Foreign Representative as may be deemed necessary or appropriate for that purpose.

[84]    REQUESTS the aid and recognition of any Court, tribunal, regulatory or administrative body in Canada, the United States of America or elsewhere, to give effect to this Order and to assist the Debtors, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Debtors, and the Monitor as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Debtors in any foreign proceeding, to assist the Debtors, and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

[85]    DECLARES that, for the purposes of any applications authorized by paragraphs [83] and [84], Debtors' centre of main interest is located in the province of Québec, Canada.

[86]    ORDERS that Exhibit P-2 and Appendices A, B, C and D to Exhibit P-6 in support of the Application are confidential and are filed under seal.

[87]    ORDERS the provisional execution of this Order notwithstanding any appeal.


_____
The Honourable Peter Kalichman, J.S.C.

**Schedule A**

**SALE GUIDELINES**